16-2364-cv
*Emily Vega v. Eric T. Schneiderman*

# In the
# United States Court of Appeals
## For the Second Circuit

————

August Term, 2016

No. 16-2364-cv

————

EMILY VEGA,
*Petitioner-Appellant*,

*v.*

ERIC T. SCHNEIDERMAN, Attorney General of the State of New York,
*Respondent-Appellee.*

————

Appeal from the United States District Court
for the Southern District of New York.
No. 12-cv-6994 — Paul G. Gardephe, *Judge*.

————

Argued: April 5, 2017
Decided: June 23, 2017

————

Before: JACOBS, PARKER, AND LIVINGSTON, *Circuit Judges*.

————

Petitioner-Appellant Emily Vega was convicted in New York state court of attempted criminal contempt in the second degree, a

misdemeanor, and harassment in the second degree, a violation under state law. She was sentenced to a one-year conditional discharge, with the condition that she abide by a two-year order of protection. After exhausting remedies in state court, Vega filed a petition for writ of habeas corpus in the United States District Court for the Southern District of New York. *See* 28 U.S.C. § 2254. The magistrate judge (Fox, *M.J.*), to whom the case had been referred, recommended the petition be dismissed for lack of jurisdiction, concluding that § 2254(a)'s custody requirement had not been satisfied because the one-year conditional discharge expired before she filed her petition. On review of the magistrate's recommendation, the district judge (Gardephe, *J.*) dismissed the petition on separate grounds, ruling that it was moot because Vega failed to identify non-speculative collateral consequences flowing from her conviction. Because we conclude that the order of protection did not place Vega "in custody" for purposes of § 2254(a), we affirm the district court's dismissal of the petition.

————

JODY RATNER (Robert S. Dean, *on the brief)*, Center for Appellate Litigation, New York, NY, *for Petitioner-Appellant*.

CATHERINE M. RENO (Nancy D. Killian, *on the brief*), Assistant District Attorney *for* Darcel D. Clark, District Attorney for Bronx County, Bronx, NY, *for Respondent-Appellee*.

————

BARRINGTON D. PARKER, *Circuit Judge*:

This appeal considers whether a state court order of protection that prohibited Petitioner-Appellant Emily Vega from contacting the victim of her harassment places her "in custody" within the meaning of the habeas statute, 28 U.S.C. § 2254. We conclude that it does not.

# I. BACKGROUND

In July 2009, Vega confronted Magdalena Camacho in front of an apartment building in the Bronx and an altercation ensued. Because at the time of this confrontation there was an order of protection in place against Vega directing her to stay away from Camacho, Vega was arrested and charged with criminal contempt in the second degree and harassment in the second degree. Before trial in Bronx County Supreme Court, the criminal contempt charge was reduced to attempted criminal contempt, a misdemeanor, which was tried to the court along with the harassment charge. At the close of the evidence, the court told the parties it would waive closing arguments and that closing memoranda would not be accepted.

Vega was convicted on both charges and was sentenced to a one-year conditional discharge, with the condition that she abide by a two-year order of protection. The order of protection required Vega to "stay away from [Camacho] and/or from" Camacho's home, school, business, and place of employment until September 20, 2012. Appendix ("App.") 109. While Camacho did not live at the Bronx apartment where the confrontation occurred, she visited the building every day so that her mother, who lived there, could look after her children. Vega's mother-in-law also lived in the building.

After exhausting state court remedies, Vega filed a petition under § 2254 seeking habeas relief on the ground that the trial court's denial of an opportunity for defense counsel to make a closing argument violated her Sixth Amendment right to assistance of counsel under *Herring v. New York*, 422 U.S. 853 (1975). Vega contended that although she was not incarcerated at the time she filed her petition, she was still "in custody" within the meaning of § 2254(a) because she was subject to an order of protection that imposed a significant restraint on her liberty.

Magistrate Judge Fox recommended that the petition be dismissed for lack of jurisdiction, concluding that, for a different reason than we express here, § 2254(a)'s custody requirement had

not been satisfied. Judge Fox did not address the merits of Vega's claim. On review of Judge Fox's recommendation, Judge Gardephe dismissed the petition as moot, concluding that the potential collateral consequences of Vega's convictions were too speculative to demonstrate the existence of a live case or controversy sufficient to establish Article III standing. The district court granted Vega a certificate of appealability on her Sixth Amendment claim.

## II. DISCUSSION

We review *de novo* a district court's dismissal of a § 2254 petition, including whether a petitioner was "in custody" at the time of filing. *See Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011). In order for a federal court to have jurisdiction over a habeas petition, the petitioner must be "in custody pursuant to the judgment of a State court" at the time the petition is filed. 28 U.S.C. § 2254(a); *Maleng v. Cook*, 490 U.S. 488, 490–91 (1989). The custody requirement may be satisfied by restraints other than "actual, physical custody" incarceration. *Jones v. Cunningham*, 371 U.S. 236, 239–40 (1963). A petitioner may satisfy this requirement where she is subject to a significant restraint upon her physical liberty "not shared by the public generally." *Id.* at 240. The focus is not so much on actual physical custody, but "the 'severity' of an actual or potential restraint on liberty." *Poodry v. Towanda Band of Seneca Indians*, 85 F.3d 874, 894–95 (2d Cir. 1996).

It is well settled that the custody requirement is "designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty." *Hensley v. Mun. Ct., San Jose Milpitas Jud. Dist.*, 411 U.S. 345, 351 (1973). Indeed, even before the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, the use of habeas corpus was long "limited to cases of special urgency, leaving more conventional remedies for cases in which the restraints on liberty are neither severe not immediate." *See id.*; *see also* 28 U.S.C. § 2254(d), (e).

Accordingly, we have held that penalties that do not impose a severe restraint on individual liberty or the imminent threat of such a restraint do not satisfy the "in custody" requirement. *See, e.g.*, *Kaminski v. U.S.*, 339 F.3d 84, 87–88 (2d Cir. 2003) (holding a restitution order could not be challenged through habeas petition because a monetary fine was not a sufficient restraint on liberty to meet the 'in custody' requirement); *Ginsberg v. Abrams*, 702 F.2d 48, 49 (2d Cir. 1983) (petitioner's removal from the bench, revocation of his license to practice law, and disqualification as a real estate broker and insurance agent did not satisfy the custody requirement). We believe that the "restriction" on Vega's liberty is an analogue to ones we have held to be insufficient.

Vega, pointing to our recent decision in *Nowakowski v. New York*, 835 F.3d 210 (2d Cir. 2016), argues that her sentence of a one-year conditional discharge in which she was to abide by a two-year order of protection was a sufficiently severe restraint on her liberty for habeas purposes. In that case, we held that a sentence of one year's conditional discharge, which required the performance of one day of community service within that time, sufficiently restrained Nowakowski's liberty to satisfy the "in custody" statutory requirement. *Id.* at 217.

We found it significant that Nowakowski's sentence required his physical presence at particular times and locations both for community service and court appearances. *Id.* We pointed to cases in which the Supreme Court and other Courts of Appeals "considered even restraints on liberty that might appear short in duration or less burdensome than probation or supervised release severe enough because they required petitioners to appear in certain places at certain times . . . or exposed them to future adverse consequences on discretion of the supervising court." *Id.* at 216 (collecting cases).

Here, Vega's sentence does not rise to the same level of restraint as did the sentence in *Nowakowski*. First, Vega concedes that, unlike in *Nowakowski*, her sentence never required her physical

presence at a particular time or location. Nor was she affirmatively required to do anything such as perform community service. Although she contends that this is a "distinction without a difference," Appellant's Br. at 28–29, we disagree. The only restraint on Vega's freedom was that she stay away from Camacho. This narrow and pinpointed restriction is neither severe nor significant. In fact, at Vega's trial in 2010, she testified that she had not seen Camacho since 2006, and Camacho testified that she had only encountered Vega "a couple of times" in the previous five years. App. 47. In any event, the restriction is far less intrusive than the restrictions imposed on Nowakowski which required him to be in a particular place at a particular time and perform a specific act under the threat of further penal sanction. *See Triestman v. Schneiderman*, 1:16-CV-01079 (LEK/DEP), 2016 WL 6106467, at *3 (N.D.N.Y. Oct. 19, 2016), *appeal filed* (Nov. 14, 2016) (No. 16-3831) ("[S]omeone who must appear in court is required to be there at a specified time. She has only one real choice as to how she spends the time allotted for her court appearance, because if she fails to show up, she may face serious consequences. But Triestman can go anywhere he likes at any time so long as he avoids his daughter. The range of options available to him on a given day is therefore much greater than that open to someone who must appear in court that day.") By contrast, Vega can go anywhere at any time and do anything she wants as long as she avoids an intentional confrontation with Camacho. We view this "restriction" as modest, not severe.

Moreover, the order of protection did not expose Vega to future adverse consequences at the  discretion of a supervising court as did the order in *Nowakowski*. Although Vega faced the possibility of some new charge and future sanction if she were to violate the order of protection, we are not convinced that the entirely speculative possibility of a future charge for a future violation is sufficiently severe to place Vega "in custody" for purposes of the

habeas statute. If this were enough, every state order of protection could become the subject of federal habeas litigation.

Vega argues that because Camacho visited the apartment building where Vega's mother-in-law lived every day to drop off and pick up her children, "it was possible" that Vega would encounter Camacho. Appellant's Br. at 29. Again, we are not convinced. It is clear to us that an inadvertent encounter with Camacho would not violate the order of protection unless Vega engaged with her or drew attention to Vega's presence. Under N.Y. Penal Law § 215.50, violation of the order of protection would require the state to establish "intentional disobedience" of the order. Thus, the chance or inadvertent encounter that concerns Vega would not suffice. To place herself in jeopardy, Vega must intentionally confront Camacho. In *Holmes v. Satterberg*, 508 Fed. App'x 660 (9th Cir. 2013), the Ninth Circuit held that the district court lacked jurisdiction over a habeas petition because "[t]he state court's order that Holmes 'shall have no contact with' the victims of his harassment did not place a 'severe' and 'immediate' restraint on Holmes' individual liberty, and thus does not render him 'in custody' for habeas purposes." *Id.* at 661 (citations omitted). The court rejected the same argument that Vega makes here, holding that the possibility of accidental contact would violate the order was "highly speculative." *Id.; see also Dremann v. Frances*, 828 F.2d 6, 7 (9th Cir. 1987) (concluding petitioner was not "in custody" where a significant restraint was merely speculative); *Triestman*, 2016 WL 6106467, at *3 (holding that because the petitioner, who was ordered to stay away from his daughter, could coordinate with the mother of his child to ensure that their daughter's schedule did not overlap with his, he was not sufficiently constrained to rise to the level of being "in custody"). We agree. For these reasons, we conclude that the order of protection does not constitute a significantly severe restraint to satisfy the "in custody" requirement of § 2254(a).

## CONCLUSION

The judgment of the district court is affirmed.