*O'Neill v. Deml*

# United States Court of Appeals
## For the Second Circuit

August Term 2024

Submitted: June 23, 2025
Decided: August 27, 2025

No. 23-620

ROBIN O'NEILL,

*Petitioner-Appellant,*

*v.*

NICHOLAS DEML, Commissioner, Vermont Department
of Corrections,

*Respondent-Appellee.*

Appeal from the United States District Court
for the District of Vermont
No. 22-cv-140, William K. Sessions III, *Judge.*

Before: CHIN, SULLIVAN, and MERRIAM, *Circuit Judges.*

Petitioner-Appellant Robin O'Neill, who is serving a life sentence for a double homicide, appeals from a judgment of the United States District Court for the District of Vermont (Sessions, *J.*) dismissing her *pro se* petition for a writ of habeas corpus made pursuant to 28 U.S.C. § 2254. The district court dismissed O'Neill's petition for failure to fully exhaust all her claims in the state courts. On appeal, O'Neill does not dispute that her "mixed" petition included both

exhausted and unexhausted claims; instead, she argues that the district court erred because it did not inform her that she could have requested a stay of the exhausted claims or filed an amended petition that only included the exhausted claims. She also contends that the district court erred by failing to advise her of the one-year statute of limitations that applied to her exhausted claims under the Antiterrorism and Effective Death Penalty Act of 1996. We hold that the district court has no obligation to explain *sua sponte* to a *pro se* petitioner her options following the dismissal of her "mixed" habeas petition or the potential effects that such a dismissal could have on the timeliness of her claims. Accordingly, we **AFFIRM** the district court's judgment.

AFFIRMED.

> Randall D. Unger, Kew Gardens, NY, *for Petitioner-Appellant*.
>
> Ryan P. Kane, Deputy Solicitor General, Office of the Attorney General, Montpelier, VT, *for Respondent-Appellee*.

PER CURIAM:

Petitioner-Appellant Robin O'Neill, who is serving a life sentence for a double homicide, appeals from a judgment of the United States District Court for the District of Vermont (Sessions, *J.*) dismissing her *pro se* petition for a writ of habeas corpus made pursuant to 28 U.S.C. § 2254. The district court dismissed O'Neill's petition for failure to fully exhaust all her claims in the state courts. On appeal, O'Neill does not dispute that her "mixed" petition included both exhausted and unexhausted claims; instead, she argues that the district court erred

because it did not inform her that she could have requested a stay of the exhausted claims or filed an amended petition that only included the exhausted claims. She also contends that the district court erred by failing to advise her of the one-year statute of limitations that applied to her exhausted claims under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). We hold that the district court has no obligation to explain *sua sponte* to a *pro se* petitioner her options following the dismissal of her "mixed" habeas petition or the potential effects that such a dismissal could have on the timeliness of her claims. Accordingly, we AFFIRM the district court's judgment.

## I. BACKGROUND

In 2017, a jury convicted Robin O'Neill of aggravated murder for killing her ex-fiancé and his son. A state-court judge subsequently sentenced her to life in prison. O'Neill appealed her conviction, which the Vermont Supreme Court affirmed. O'Neill then filed a petition seeking post-conviction relief in the Vermont Superior Court, arguing that her counsel provided her with ineffective assistance. She subsequently amended her state petition in 2021, again asserting ineffective assistance of counsel.

While that petition was pending before the state court, O'Neill filed, *pro se*, the federal petition now at issue in this appeal. In that petition, O'Neill asserted

3

a variety of constitutional challenges, including the claim of ineffective assistance of counsel that was pending before the Vermont Superior Court. The district court dismissed O'Neill's mixed petition, concluding that O'Neill's inclusion of unexhausted claims barred her federal petition. *See* App'x at 317; *see also* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State."). O'Neill timely appealed, arguing that the district court erred by failing to (1) provide her with "an appropriate explanation . . . of her available options and the consequences" of filing a mixed petition for a writ of habeas corpus, and (2) explain "the effect of a dismissed mixed petition on time-barred and unexhausted claims." O'Neill Br. at 2.

## II.   DISCUSSION

In reviewing a district court's dismissal of a habeas petition, we review the district court's legal conclusions *de novo*. *See, e.g.*, *Vega v. Schneiderman*, 861 F.3d 72, 74 (2d Cir. 2017).[1]

---

[1] Although the parties suggest that we should review the district court's dismissal for abuse of discretion, the questions presented in this appeal are legal ones – *i.e.*, whether a district court has a legal obligation to *sua sponte* inform a *pro se* petitioner of her options upon the filing of a mixed

4

Until AEDPA was enacted in 1996, whenever a state prisoner submitted a mixed petition for a writ of habeas corpus with a federal district court, the "district court [was required to] dismiss [the] mixed petition[], leaving the prisoner with the choice of returning to state court to exhaust [her] claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." *Rose v. Lundy*, 455 U.S. 509, 510 (1982) (internal quotation marks omitted). Following the enactment of AEDPA, the Supreme Court permitted federal courts to "stay and abey" such mixed petitions, whereby the district court would dismiss any unexhausted claims from the mixed petition, stay the remaining exhausted claims, and permit the petitioner to subsequently amend the original petition to add the newly exhausted claims at the conclusion of the state-court proceedings. *See Pliler v. Ford*, 542 U.S. 225, 230–31 (2004); *see also Rhines v. Weber*, 544 U.S. 269, 277 (2005) (approving the stay-and-abeyance procedure under certain circumstances).

On appeal, O'Neill argues that the district court should have explained all the options available to her "so that she could make an informed decision [about] whether to press the []exhausted claims in the district court, withdraw the

---

petition or the effects the dismissal of that petition could have on her claims.    Accordingly, we review them *de novo*.

unexhausted claims, or request a stay of the proceedings" pending the exhaustion of those claims in state court. O'Neill Br. at 11–12. In essence, O'Neill contends that the district court was obliged to *sua sponte* explain both what course of action she could take upon filing a mixed habeas petition and the potential consequences that the court's dismissal of that petition could have on her claims. According to O'Neill, such explanations would align with the principle that there is "an obligation on the part of the court to make reasonable allowances to protect *pro se* [petitioners] from inadvertent forfeiture of important rights because of their lack of legal training." *Id.* at 15–16 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

To be sure, we have previously recognized that "[i]f a district court elects . . . [to] dismiss[] the entire petition, it should normally include in the dismissal order an appropriate explanation to a *pro se* petitioner of the available options and the consequences of not following required procedures." *Zarvela v. Artuz*, 254 F.3d 374, 382 (2d Cir. 2001). But since our decision in *Zarvela*, the Supreme Court has rejected the contention that district courts must provide such explanations, holding "that federal district judges are not required to give *pro se* litigants" detailed warnings about their options when they file mixed petitions or about the

6

potential effects that dismissal of such petitions could have on their claims. *Pliler*, 542 U.S. at 231-33. Therefore, to the extent our language in *Zarvela* could be read to impose a legal obligation on district courts to advise *pro se* petitioners of their options and the consequences of filing a mixed petition, that obligation no longer exists after *Pliler*.

It bears noting that *Pliler* involved a fact pattern that is strikingly similar to the one at issue here. In *Pliler*, the *pro se* petitioner filed a mixed petition, which the district court dismissed without first explaining to the petitioner that (1) he could choose to dismiss his unexhausted claims, stay his petition until he exhausted his unexhausted claims in state court, and then amend his petition once all his claims were exhausted, and (2) any subsequent petition, *i.e.*, one that was not stayed by the district court, would likely be time-barred under AEDPA's one-year statute of limitations. *See id.* at 228–31. Although the Ninth Circuit held that the district court committed reversible error by not providing such guidance to the petitioner, the Supreme Court reversed, holding that "a defendant does not have a constitutional right to receive personal instruction from the trial judge on courtroom procedure" and that "the Constitution does not require judges to take over chores for a *pro se* defendant that would normally be attended to by trained

7

counsel as a matter of course." *Id.* at 231 (alterations accepted and internal quotation marks omitted). The Court also warned that "[r]equiring district courts to advise a *pro se* litigant" in the manner proposed by the Ninth Circuit – that is, by "[e]xplaining the details of federal habeas procedure and calculating statutes of limitations" – "would undermine [the] district [judge's] role as [an] impartial decisionmaker[]." *Id.*

In light of *Pliler*'s clear language, we now join both the Sixth and Ninth Circuits in holding that district courts are under *no* obligation to *sua sponte* advise *pro se* petitioners of their options upon filing a mixed petition or the effects that the dismissal of such a petition could have on their claims.[2] *See Robbins v. Carey*, 481 F.3d 1143, 1148 (9th Cir. 2007) ("*Pliler* makes it clear that district courts are not *required* to consider *sua sponte* the stay-and-abeyance procedure. Such a mandatory action by the trial judge falls within the set of 'chores' targeted by the Supreme Court in *Pliler*."); *McBride v. Skipper*, 76 F.4th 509, 514 (6th Cir. 2023)

---

[2] Although we hold that courts in this Circuit are not required to provide this advice, we note that they nevertheless may do so, especially when the advice given serves to alert a petitioner generally of the constraints imposed by AEDPA, as opposed to the merits of the various options. *See Zarvela*, 254 F.3d at 382 ("[T]he dismissal order might usefully advise the petitioner of his option to drop his unexhausted claims and resubmit a petition containing only his exhausted claims, or to exhaust his unexhausted claims in state court and then return to federal court. It would also be useful to alert the petitioner to the one-year limitations period of AEDPA and to the fact that a portion of that period has already elapsed.").

("Federal district court judges have 'no obligation' to warn a *pro se* petitioner about how a circuit's stay-and-abey procedure or AEDPA's [one]-year statute of limitations would impact [her] mixed petition." (quoting *Pliler*, 542 U.S. at 231)). Accordingly, we cannot say that the district court erred in dismissing O'Neill's petition without first explaining her stay-and-abey options or the potential effects of the district court's dismissal on her subsequently filed claims.[3]

### III.   CONCLUSION

For all the foregoing reasons, we **AFFIRM** the judgment of the district court.

---

[3] This opinion has been circulated to all the judges of the Court prior to filing.