NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0174n.06
Filed: March 8, 2006
Case No. 05-5075

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| ERNEST WAYNE ANGLIN, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |

**BEFORE: BOGGS, Chief Judge, and BATCHELDER, Circuit Judge; COHN[*], District Judge.**

**ALICE M. BATCHELDER, Circuit Judge.** Ernest Wayne Anglin ("Anglin") appeals the sentence imposed by the district court after Anglin pled guilty to one count of bank robbery, in violation of 18 U.S.C. § 2113(a). The Pre-Sentence Investigation Report calculated Anglin's guideline range as 151-188 months' incarceration and the district court adopted its findings, sentencing him to 168 months in prison, three years of supervised release, and $266 in restitution. Anglin assigns as error the district court's treating the United States Sentencing Guidelines as mandatory and its finding that a prior conviction under the federal escape statute, 18 U.S.C. § 751(a), is a "crime of violence" for sentencing guidelines purposes. Although we find no error in the way the district court calculated Anglin's sentence, we must remand this case to the district court for re-sentencing under *United States v. Barnett*, 398 F.3d 516 (6th Cir. 2005).

---

[*]The Honorable Avern L. Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I.  Procedural History

Anglin pled guilty to the charge of bank robbery, and he does not challenge that plea on appeal.  The facts of the robbery are therefore not material to this appeal.  But Anglin did not enter into any plea agreement with the government, nor did he admit, at the plea hearing, to any prior convictions.  At sentencing, Anglin objected to the Pre-Sentence Investigation Report's conclusion that he should be sentenced as a career offender because he had two prior convictions that qualified under U.S.S.G. § 4B1.2 as "crimes of violence":  a 1995 conviction for violating the federal escape statute, 18 U.S.C. § 751(a), and a 1984 Tennessee conviction for burglary of a dwelling.  Anglin conceded the fact of both convictions, including that the burglary was of a dwelling, but he objected to the characterization of them as crimes of violence.  As to the escape conviction, Anglin offered a document from the Bureau of Prisons denoting Anglin's escape offense as "non-violent."  Anglin objected as well to being sentenced under the Sentencing Guidelines, citing *Blakely v. Washington*, 124 S. Ct. 2531 (2004), and argued that no facts relevant to a determination of career offender status had been charged in the indictment or found by the jury beyond a reasonable doubt.

The district court found that both of Anglin's prior convictions were for crimes of violence, relying with regard to the escape offense on *United States v. Harris*, 165 F.3d 1062 (6th Cir. 1999), and treated the sentencing guidelines as mandatory pursuant to our decision in *United States v. Koch*, 383 F.3d 436 (6th Cir. 2004).  Anglin filed this timely appeal and asserts that, under the "categorical approach," a violation of the federal escape statute is not a "crime of violence" and that he should not have been eligible for career offender status.  He also complains that the district court erred in treating the guidelines as mandatory and in finding the facts regarding his prior convictions

2

by a preponderance of the evidence where those facts were not charged in the indictment and he had not admitted them.

## II. Remand for Re-Sentencing

The district court sentenced Anglin after our decision in *Koch*. The court treated the sentencing guidelines as mandatory and did not impose an alternative sentence. Because Anglin timely objected to this use of the guidelines, the issue was properly preserved for review, and the government agrees that the case must be remanded to the district court for re-sentencing under *Barnett*.

Anglin also argues that because the district court found the facts of his prior convictions by a preponderance of the evidence and Anglin had not admitted those facts, the sentence violated his Sixth Amendment rights. This argument is foreclosed by the Supreme Court's decisions in *United States v. Almendarez-Torres*, 523 U.S. 224, 230 (1998); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *Blakely v. Washington*, 542 U.S. 296, 301 (2004); and *United States v. Booker*, 543 U.S. 220, 244 (2005).

## III. Calculation of the Guideline Range

Anglin also challenges the district court's classification of his prior conviction under the federal escape statute as a "crime of violence" for guidelines calculation purposes. Although the case must be remanded under *Barnett*, in the interests of judicial economy, we will review Anglin's claims of error in the calculation of his guidelines sentence, because *Booker* instructed sentencing courts to take the guidelines into account when determining a defendant's sentence. *Booker*, 543 U.S. at 259-60. In *United States v. Davidson*, 409 F.3d 304 (6th Cir. 2005), we determined that, based on *Booker*'s instructions, we must review a district court's application of the guidelines in the

3

same way that we did before *Booker* because, although the guidelines are no longer mandatory, they do form a starting point for the district court's determination of the defendant's sentence. *Id.* at 310.

We review de novo the district court's interpretations of the sentencing guidelines, and we review its factual findings for clear error. *United States v. Williams*, 411 F.3d 675, 677 (6th Cir. 2005); *United States v. Burke*, 345 F.3d 416, 428 (6th Cir. 2003). We must defer to the district court's application of the guidelines to the facts. *United States v. Charles*, 138 F.3d 257, 266 (6th Cir. 1998).

The sentencing guidelines provide for a sentence enhancement based on the defendant's status as a "career offender," as defined in U.S.S.G. § 4B1.1. That section provides that, in order to be classified as a career offender: (1) the defendant must have been 18 years old when he committed the offense for which he is to be sentenced; (2) that offense must have been a felony constituting either a "crime of violence" or a "controlled substance offense"; and (3) the defendant must have had at least two prior felony convictions falling into one or the other of those categories. U.S.S.G. § 4B1.1(a). Anglin admitted at sentencing that he had been convicted of the burglary and that burglary is an enumerated "crime of violence," and he did not urge further his objection to that conviction's being counted in the career offender calculation. Nor does he pursue that claim on appeal.

Anglin's challenge is to the use of his escape conviction in the career offender calculation. Anglin pled guilty in 1995 to a violation of the federal escape statute, which provides that it is an offense against the United States to escape from a penal institution or from various forms of "custody." Specifically, the statute provides for punishment for

> [w]hoever escapes or attempts to escape from the custody of the Attorney General
> . . ., or from any institution or facility in which he is confined by discretion of the

4

> Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge, or from the custody of an officer or employee of the United States pursuant to lawful arrest . . . .

18 U.S.C. § 751(a). Section 751 is not one of the crimes specifically listed in the guidelines as a per se crime of violence, but it may still be considered one if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(2).

In *Harris*, on which the district court relied in this case, we addressed the same question we address here, except that Harris's prior escape conviction was under the Tennessee statute relating to escape. 165 F.3d at 1067. The Tennessee statute made it a crime for "any person confined in a county workhouse or jail or city jail or municipal detention facility upon any charge of or conviction of a criminal offense constituting a felony [to] escape or attempt to escape therefrom . . . ." *Id.* We recognized that Harris's offense was neither a burglary nor one of the other enumerated offenses listed in U.S.S.G. § 4B1.2, stating that "[t]he question, then, comes down to this: Did the escape offense 'otherwise involve [] conduct that present[ed] a serious potential risk of physical injury to another' within the meaning of [U.S.S.G. § 4B1.2(a)(2)]?" *Id.*

In answering that question, we noted that we could not take into account the particular facts of Harris's escape. *Id.* at 1068. Rather, courts are to consider whether escape is a crime of violence using the "categorical" approach, which requires us to base our determinations on the statutory definition of the crime. *Id.* We found that "at least two other circuits" that have addressed the question have found that the crime of escape, by its very nature, presents a risk of violence and is therefore a "crime of violence" for the purposes of the sentencing guidelines, and we agreed with the Tenth Circuit that:

5

every escape scenario is a powder keg, which may or may not explode into violence and result in physical injury to someone at any given time, but which always has the serious potential to do so. . . . A defendant who escapes from jail is likely to possess a variety of supercharged emotions, and in evading those trying to recapture him, may feel threatened by police officers, ordinary citizens, or even fellow escapees. Consequently, violence could erupt at any time. Indeed, even in a case where a defendant escapes from jail by stealth and inures no one in the process, there is still a serious potential risk that injury will result when officers find the defendant and attempt to place him in custody.

*Id.* (quoting *United States v. Gosling*, 39 F.3d 1140, 1142 (10th Cir. 1994) (internal quotation marks omitted).

Though we recognized the well-established rule that if the court finds that certain conduct falling within the statute's coverage is properly considered non-violent, it may review the indictment and any plea agreement to see the specific conduct with which this defendant was charged, we held that Harris's escape was categorically a "crime of violence" for sentencing guidelines purposes and saw no occasion to examine any of the specifics of the offense. *Id. See also Shepard v. United States*, 544 U.S. 13, 125 S. Ct. 1254, 1257 (2005) (adding that a court may also consider a plea colloquy transcript and an "explicit factual finding by the trial judge to which the defendant assented").

The United States argues that *Harris* dictates our decision in this case and cites to many other decisions upholding the rationale that an "escape" is by nature a crime of violence. Anglin argues that the categorical approach shows that the least objectionable conduct under the *federal* escape statute could involve an action as simple as reporting late to serve a sentence, and that we must therefore look to the circumstances of his offense, which he believes show his offense was non-violent. While the federal escape statute plainly encompasses more conduct than the Tennessee statute at issue in *Harris*, we have previously held, albeit in an unpublished opinion, that the *Harris*

6

rationale applies equally to § 751, which includes escape from any kind of "custody," and does not apply only to statutes outlawing escapes from prisons or work sites. *See United States v. Rodgers*, 230 F.3d 1361, 2000 WL 1434706, \*4-5 (6th Cir. 2000) (Table). In another unpublished decision, we recognize the validity of *Harris* and *Rodgers* and cited their holdings with approval. *See United States v. Roberts*, 59 Fed. App'x 86 (6th Cir. 2003).

Moreover, cases from other circuits have held that escape is categorically a crime of violence even when the statute at issue encompasses a broader swath of conduct than escape from a prison or work site. *See United States v. Ruiz*, 180 F.3d 675, 677 (5th Cir. 1999); *United States v. Bryant*, 310 F.3d 550, 553-54 (7th Cir. 2002). Though Anglin is correct that "custody" can encompass more than being physically restrained in a jail cell or work camp, *see United States v. Keller*, 912 F.2d 1058, 1060 (9th Cir. 1990); *Barry v. Bergen County Probation Dep't*, 128 F.3d 152, 160 (3d Cir. 1997); *Edmunds v. Won Bae Chang*, 509 F.2d 39, 41-42 (9th Cir. 1975); *Phelps v. Barbara*, 162 F.3d 1174 (10th Cir. 1998) (Table), and the passage consistently quoted from *Gosling* in support of finding that escape is a crime of violence explicitly makes reference to circumstances that are only applicable in the prison break context, *see Gosling*, 39 F.3d at 1142, the weight of the authority is in favor of finding that a § 751 violation is categorically a "crime of violence." Anglin cannot point to any case that has decided this issue to the contrary. Accordingly, we need not examine the specifics of Anglin's escape, and we hold that the district court did not err in its guideline calculations by treating the escape conviction as a crime of violence.

## IV. Conclusion

For the foregoing reasons, we **VACATE** Anglin's sentence and **REMAND** to the district court for re-sentencing.

**Avern Cohn, District Judge, concurring in part and dissenting in part.** I agree the case must be remanded to the district court for re-sentencing under United States v. Barnett, 398 F.3d 516 (6th Cir. 2005). However, because not reporting to a designated institution voluntarily after being directed to do so at sentencing is a violation of 18 U.S.C § 751(a), United States v. Keller, 912 F.2d 1058 (9th Cir. 1990), the circumstances of the escape should be examined before a violation of § 751(a) can be characterized a "crime of violence."